## McMillin Estate

*Gilbert E. Long*, for petitioners.

*Sherman K. Levine*, contra.

REED, P. J., specially presiding, April 18, 1958.— John C. McMillin, aged 84 years, died August 22, 1956. By item 2 of his will, dated September 25, 1954, he bequeathed $9,000 to his three sisters, Ellen McMillin, Matilda McMillin Miller and Martha McMillin McClurg, in equal shares, providing that should any of them die in his lifetime then their share would be taken by the survivor or survivors. By item 3 he be-

queathed $1,500 to his nephews, H. Everet Marshall, Edward McMillin and William McMillin, in equal shares, and providing that if any of them die in his lifetime such share should be taken by the survivor or survivors of them. By items 4 to 8, inclusive, he made other bequests, and by item 9 bequeathed his entire residuary estate, real and personal, to Helen J. Cwynar (Tommelleo) etc., and appointed Union Trust Company, New Castle, as executor thereof.

Item 10 of decedent's will contains an in terrorem or a provision against contest clause and reads as follows:

"Provided always, and I do hereby declare my Will to be, that if any person or persons to whom any estate or interest is given or limited by this my Will shall, in any court of law or equity, or otherwise, controvert the same, or dispute or call in question the validity hereof, or of any of the estates, limitations, powers, provisos, or dispositions hereby limited or given, or made, or herein contained, then and in such case the estates, interests, limitations, so hereby limited, to or in favor of such person or persons so controverting my said Will, shall cease, determine, and be absolutely void to all intents and purposes whatsoever, as if such person or persons was or were naturally dead. And then and from thenceforth such estates, interests, limitations, powers, provisos and dispositions shall go and belong to and be vested in the residuary beneficiary; provided he, she, or they shall not controvert or dispute the validity of this my Will, or any of the devises, limitations, powers, provisos, or dispositions herein contained or hereby made."

Decedent's will was probated and letters testamentary were granted thereon by the register of wills of Lawrence County on September 4, 1956, said will being registered in Will Book vol. 32, p. 46.

On September 14, 1956, Eleanor McMillin Cox, a niece, but not a beneficiary under the will, Matilda McMillin Miller, Martha McMillin McClurg, H. Everet (H. Everett) Marshall and Edward (E. E.) McMillin, beneficiaries named in items 2 and 3 of decedent's will with the exception of Ellen McMillin and William McMillin, appealed from decree of the register of wills admitting decedent's will to probate and thereafter, following other preliminary proceedings, they filed a petition on April 26, 1957, praying that a citation be awarded directed to all parties in interest to show cause why the appeal from the decree of the register of wills admitting said will to probate should not be sustained and the decree set aside, alleging that a confidential relationship existed between decedent and Helen Cwynar (Tommelleo), that the execution of said will had been procured by undue influence and lack of testamentary capacity.

Proceedings on this appeal are still pending, no hearing having been had thereon.

The matter is now before the court on the petition, filed February 3, 1958, of all of said parties who appeal from the probate of the will to show cause why they should not be permitted to withdraw their appeal from the probate of said will without prejudice to their rights as legatees to participate in the estate of decedent, notwithstanding the provision in said will providing for forfeiture of legacies.

To said last mentioned petition an answer has been filed by Helen Cwynar (Tommelleo), the residuary devisee and legatee, agreeing that the appeal from probate should be dismissed but contending that it should not be dismissed without prejudice and asserting said Helen Cwynar (Tommelleo's) right to contest petitioners' rights to share as legatees should be determined upon final distribution of the estate.

Hearing on said last mentioned petition was had before the court on February 26, 1958, at which time petitioners requested the court to consider the petition as if filed under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended and supplemented, 12 PS §831, etc.

Section 2, 12 PS §832, of that act provides, in part, as follows: "Any person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."

In Lifter Estate, 377 Pa. 227, 228, the Supreme Court, speaking through Mr. Justice Bell, reiterated the rule that "whether or not a court will take jurisdiction of a petition for a declaratory judgment or decree is purely a matter of judicial discretion . . . 'the vital factor in the assumption of jurisdiction is the presence of antagonistic claims indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy. . . .' "

The instant case indicates that these factors are present. In addition thereto, a determination under the provisions of the Uniform Declaratory Judgments Act would no doubt save the parties the expense of later extended litigation. We have, therefore, determined to consider the petition as if filed under the provisions of that act, the interested parties being all represented and presently before the court.

From the pleadings, statements of counsel, exceptions and record now before this court it appears that decedent, born January 18, 1872, died August 22, 1956, at an age of upwards of 84 years, having made his last will and testament, dated September 25, 1954. Prior to his death, on February 16, 1955, in a pro-

ceedings at no. 35, March term, 1955, in the Court of Common Pleas of Lawrence County, decedent having been found to be so impaired mentally that he was liable to become the victim of designing persons, a guardian was appointed for him. Prior to his decease, on February 26, 1955, a complaint in equity had been filed at no. 3, March term, 1955, in the Court of Common Pleas of Lawrence County by the next of kin of decedent, later joined in by his guardian, against Helen Cwynar (Tommelleo) praying equitable relief, inter alia, to set aside a conveyance of real estate to her by decedent, and to return certain personal property, etc. On December 17, 1955, the chancellor in that proceeding filed his adjudication finding that a confidential relationship existed between decedent and Helen J. Cwynar (Tommelleo) and decreeing relief as prayed for. To this decree exceptions were filed and the proceedings and record so remained on the date of decedent's death. The decree of the chancellor was later reversed by the court en banc and that decree affirmed by the Supreme Court on April 26, 1957, in the case of Union Trust Company of New Castle v. Cwynar, reported at 388 Pa. 644. That case and all proceedings in the lower court are a part of the record in the instant case. It is, therefore, clear that at the time the appeal from the probate of the will was filed the adjudicated records of proceedings in the Common Pleas and the Equity Courts of Lawrence County showed decedent to have been declared mentally incompetent on February 16, 1955, less than five months after the date of the probated will of September 25, 1954, and that a confidential relationship had been decreed to have existed as between decedent and Helen Cwynar (Tommelleo), the principal and residuary beneficiary under decedent's will.

From the earliest days of this Commonwealth it has been held that contest or opposition to a will or its

provisions will not work a forfeiture under a forfeiture or no contest clause if such opposition is made in good faith and for probable cause upon the grounds of undue influence, lack of testamentary capacity, confidential relationship or fraud. The leading case in Pennsylvania on this subject is Friend's Estate, 209 Pa. 442, and it was there held that such a penalty was not enforceable where it appeared that the appeal from probate was justified under the circumstances even though no undue influence had been found. In Friend's Estate the Supreme Court stated the applicable rule as follows, page 444:

"Such conditions to testamentary gifts and devises are universally recognized as valid, and, by some courts, enforcible without exception. The better rule, however, seems to us to be that the penalty of forfeiture of the gift or devise ought not to be imposed when it clearly appears that the contest to have the will set aside was justified under the circumstances, and was not the mere vexatious act of a disappointed child or next of kin. A different rule—an unbending one—that in no case shall an unsuccessful contestant of a will escape the penalty of forfeiture of the interest given him, would sometimes not only work manifest injustice, but accomplish results that no rational testator would ever contemplate. This is manifest from a moment's reflection and is illustrated by the class of cases to which the one now before us belongs, in which there is an allegation of undue influence which procured the execution of the will. If, as a matter of fact, undue influence is successfully exerted over one about to execute a will, that same influence will have written into it a clause which will make sure its disposition of the alleged testator's property. He who will take advantage of his power to unduly influence another in the execution of a will will artfully have a care to have inserted in it a clause to shut off all inquiry as to the influence

which really made the will; and, if the rule invoked by the appellants is to be applied with no case excepted from it, those who unscrupulously play upon the feelings of the testator may, with impunity, enjoy the fruits of their iniquity and laugh in scorn at those whom they have wronged. If the condition of forfeiture is to be enforced in every case, those who improperly influence a testator may boast to a child, against whom he discriminated, of the power they exerted over him and of what they were able to accomplish for themselves, taunting and goading on such child to a contest; and yet if, in the end, those who so invited it, and whose conduct made it justifiable, succeed in sustaining the will by retracting or denying what they said, the contestant will not only be deprived of his gift or devise, but those who drew him into the contest may acquire his portion as part of their own plunder. . . ."

While we entertain some doubt as to whether the mere filing of an appeal from probate without a completed prosecution thereof, even though pleadings have been filed, amounts to a contest in the true sense of the word, we prefer to rest our decision on the broader principle. The question, therefore, is what was the information in the possession of the person who appealed from the probate that induced them in so doing: Lewis' Estate, 19 Dist. R. 695. Did such information constitute probable cause? Probable cause has been defined in Pennsylvania "as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man . . . in believing that the party is guilty of the offense": Miller v. Pennsylvania Railroad Co., 371 Pa. 308, 314.

The testimony in the equity proceedings was extensive and complete and of such nature as to cause the chancellor, even though later reversed, to conclude that a confidential relationship existed between decedent and Helen Cwynar (Tommelleo). Coupled with this

was the adjudication of decedent's mental incapacity made by a court of competent jurisdiction, unappealed from, less than five months after decedent's will was executed. These matters were known to the instant petitioners when the appeal from probate was filed. Even though both the affirming and dissenting opinions of the Supreme Court in the case at 388 Pa. 644, held that decedent did not lack testamentary capacity, pending final adjudication of the equity case by the court en banc and by the Supreme Court, petitioners were justified and had probable cause for filing the appeal from probate under all of the circumstances. It is interesting to note that one of the distinguished and eminent justices of the Supreme Court dissented from the majority of the court and held that there was a confidential relationship between decedent and Helen Cwynar (Tommelleo) that had been violated.

We are of the opinion and find as a fact that these adjudications, without more, were sufficient information and reasons in the possession and knowledge of the next of kin of decedent to constitute probable cause such as to justify the appeal from probate of decedent's will. We are of the opinion that the prayer of the petition permitting the appeal to be discontinued and withdrawn without prejudice to the rights of the legatees to participate in the estate, should be granted and an appropriate order will be entered.

### Order

Now, April 18, 1958, it is ordered, adjudged and decreed that petitioners be and they are granted permission to withdraw and discontinue the appeal from probate of the last will and testament of John C. McMillin without prejudice to the rights of each of them to participate in the distribution of the estate of said decedent as beneficiaries thereof.